

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 27, 2020**

**United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| § | | |
| **Rhoderick Terrence Williams,** § | | **Case No. 19-33539-hdh7** |
| § | | |
| **Alleged Debtor.** § | | |

### MEMORANDUM OPINION ON QUESTIONS OF LAW
### RELEVANT TO MOTION FOR SUMMARY JUDGMENT

In an attempt to aid the parties with their discovery and preparation for upcoming hearings, the Court will address two questions of law: first, whether a bona fide dispute as to the amount of a creditor's claim is sufficient to divest that creditor of standing to file an involuntary bankruptcy petition even if there is an undisputed portion of the creditor's claim in excess of the statutory threshold; and second, whether the "special circumstances" exception to the technical requirements of section 303 of the Bankruptcy Code still exists in the wake of *Law v. Siegel*, 571 U.S. 415 (2014). For the reasons explained below, the Court concludes that the answer to both questions is "no."

## Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Procedural History

On October 25, 2019, SummitBridge National Investments III, LLC ("SummitBridge") filed an involuntary petition for relief against Rhoderick Terrence Williams (the "Alleged Debtor") under Chapter 7 of the Bankruptcy Code. The Alleged Debtor filed an amended answer to the involuntary petition on December 9, 2019.[1] On January 29, 2020, the Alleged Debtor filed a *Motion to Dismiss, Motion for Summary Judgment, and Motion to Abstain*,[2] which were subsequently set for hearing on March 10, 2020.

On February 17, 2020, SummitBridge filed an *Emergency Motion for Continuance of Deadlines and Hearing Related to Alleged Debtor's Motion for Summary Judgment*.[3] Through its Motions to Continue, SummitBridge asked the Court to (1) deny the Motion for Summary Judgment or, alternatively, (2) continue (i) SummitBridge's deadline to file a response to the Motion for Summary Judgment and (ii) the hearing on the Motion for Summary Judgment. SummitBridge argued this extension was necessary in order to permit it time to complete discovery related to the matters raised by the Alleged Debtor in his Motion for Summary Judgment.[4]

---

[1] *First Amended Answer to Involuntary Petition* [Docket No. 18].

[2] Docket Nos. 25, 27, and 28 (collectively, the "Motions"). The Alleged Debtor also filed a brief in support of the Motions. *See* Docket No. 26.

[3] Docket Nos. 62 and 64 (collectively, the "Motions to Continue").

[4] The deadline to complete discovery, as set by the Scheduling Order, was March 30, 2020. *See* Docket No. 24. At the time SummitBridge filed the Motions to Continue, it had not received any discovery responses from the Alleged Debtor.

On February 18, 2020 and February 19, 2020, the Alleged Debtor filed a response opposed to the Motions to Continue,[5] as well as an emergency motion to bifurcate certain issues raised in his Motions.[6] Through his Response and Motion to Bifurcate, the Alleged Debtor asserted that to the extent the Court was inclined to grant SummitBridge more time to conduct discovery, the Court should consider the issues for which no discovery was necessary at the hearing on March 10, 2020. SummitBridge filed an objection to the Motion to Bifurcate on February 20, 2020.[7]

The Court held an expedited hearing on February 21, 2020 to consider the Motions to Continue and the Motion to Bifurcate. Following that hearing, the Court granted in part and denied in part both the Motions to Continue and the Motion to Bifurcate.[8] Specifically, to aid the parties with their discovery and preparation for upcoming hearings, the Court ordered that the only issues it would address at a hearing on March 10, 2020 were two questions of law—namely, (1) whether a bona fide dispute as to the amount of a creditor's claim is sufficient to divest that creditor of standing to file an involuntary bankruptcy petition even if there is an undisputed portion of the creditor's claim in excess of the statutory threshold and (2) whether the so-called "special circumstances" exception to the technical requirements of section 303 remains viable after *Law v. Siegel*. The parties submitted briefing on these issues,[9] and the Court heard oral argument on March 10, 2020. Following the hearing, the Court took the matter under advisement.

---

[5] *Alleged Debtor's Response to Emergency Motion for Continuance; Emergency Motion to Bifurcate* [Docket No. 63] and *Alleged Debtor's Response to Emergency Motion for Extend; Emergency Motion to Bifurcate* [Docket No. 67] (collectively, the "Response").

[6] *Alleged Debtor's Response to Emergency Motion for Continuance; Emergency Motion to Bifurcate* [Docket No. 70] (the "Motion to Bifurcate").

[7] *Objection to Alleged Debtor's Emergency Motion to Bifurcate* [Docket No. 75].

[8] *Order Granting, in Part, Emergency Motion for Continuance of Deadlines and Hearing* [Docket No. 105]; *Order Granting, in Part, Emergency Motion to Bifurcate* [Docket No. 114].

[9] *See SummitBridge National Investments III, LLC's Brief on Legal Issues with Respect to Bona Fide Dispute and the Special Circumstances Exception to 11 U.S.C. § 303* [Docket No. 85]; *Alleged Debtor's Brief on Legal Issues with Respect to Bona Fide Dispute and the Special Circumstances Exception* [Docket No. 92].

**Legal Standard**

The Court grants summary judgment upon motion if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665 (5th Cir. 2014). At this time, the Court is only considering questions of law. The Court will consider the summary judgment evidence at a subsequent hearing and then determine whether a genuine issue of material fact exists.

**Discussion**

I. Bona Fide Dispute as to Amount

Section 303(b)(1) of the Bankruptcy Code provides that an involuntary petition may only be filed by the "holder of a claim . . . that is not . . . the subject of a bona fide dispute as to liability or amount" and "such noncontingent, undisputed claims" must aggregate at least $16,750. In 2005, Congress modified section 303(b)(1) to include the words "as to liability or amount" following the words "bona fide dispute." *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651, 656 (5th Cir. 2014) ("Prior to BAPCPA, the provision did not include the phrase 'as to liability or amount,' and some courts, including this one, interpreted the pre-BAPCPA § 303(b) to deny standing to a creditor only when there was a bona fide dispute as to liability."). Since that time, courts have been split on whether a bona fide dispute as to the amount of a creditor's claim—even if there is an undisputed portion of the creditor's claim in excess of the statutory threshold—is sufficient to divest that creditor of standing to file an involuntary bankruptcy petition. *See State Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019) (citing cases).

SummitBridge, the sole petitioning creditor in this case, takes the position that a dispute as to amount is immaterial unless it would reduce the amount of the claim below the statutory threshold in section 303(b). This view, which a leading bankruptcy treatise describes as the "better view," has been adopted by numerous bankruptcy courts across the country. 2 Collier on Bankruptcy ¶ 303.11[2] (Alan Resnick & Henry J. Sommer eds., 16th ed. rev. 2020); *see also*, *e.g.*, *In re Gen. Aeronautics Corp.*, 594 B.R. 442, 466 (Bankr. D. Utah 2018); *In re DemirCo Holdings, Inc.*, 2006 Bankr. LEXIS 1131 (Bankr. C.D. Ill. June 9, 2006). The Alleged Debtor, on the other hand, asserts that any dispute as to amount renders the entire claim subject to a bona fide dispute within the meaning of section 303(b)(1), even if a portion of that claim is undisputed. Only two circuit courts have directly addressed this issue, and both have adopted this position. *See Blixseth*, 942 F.3d at 1181;[10] *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016).

This Court agrees with SummitBridge and concludes that a bona fide dispute as to the amount of a creditor's claim does not divest that petitioning creditor of standing to file an involuntary petition if there is an undisputed portion of the creditor's claim in excess of the statutory threshold. *See* 11 U.S.C. § 303(b). In doing so, the Court adopts the reasoning and analysis of the court in *In re Gen. Aeronautics Corp.*, 594 B.R. 442, 462-66 (Bankr. D. Utah 2018) (noting that '[w]hen Congress amends the bankruptcy laws, it does not write on a clean slate.'"). This interpretation strikes the proper balance "between the ability of petitioning creditors to have access to the bankruptcy courts and the interest of would-be debtors to remain free from

---

[10] *Blixseth* cites to the Fifth Circuit's decision in *Green Hills* as support for the proposition that a dispute over a mere portion of a claim, even if such dispute does not bring the claim below the statutory threshold, is sufficient to render the claim subject to a bona fide dispute under section 303(b)(1). *Blixseth*, 942 F.3d at 1186. However, the Fifth Circuit did not directly analyze this issue. *Green Hills*, 741 F.3d at 657. The Fifth Circuit noted "that a bona fide dispute as to the amount of the debt is now sufficient to deny a creditor standing to bring an involuntary petition. Thus, to the extent that our pre-BAPCPA precedent suggests to the contrary, that precedent is no longer good law." *Id.* The Court did not, however, specifically address the materiality of such amount (*i.e.*, whether or not a dispute as to the amount of a claim must fall under the statutory threshold of section 303(b) sufficient to make it a "bona fide dispute."). *See id.*

involuntary petitions," and is in line with the legislative history of section 303(b)(1). *Id*. at 465. On this point, however, the Court also concludes that an alleged debtor's offsetting counterclaims can create a bona fide dispute as to amount if they cause the amount owed to the creditor to fall beneath the statutory threshold or could erase the entire debt. *See Green Hills*, 741 F.3d at 658.

 II. The "Special Circumstances" Exception

The "special circumstances" exception is a judge-made doctrine that holds that certain technical requirements of section 303 may be inapplicable where an alleged debtor commits acts of "fraud, trick, artifice, or scam." *In re Moss*, 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000). It stems from *7H Land & Cattle Co.*, 6 B.R. 29, 33 (Bankr. D. Nev. 1980), in which the court analyzed whether the failure to pay a single creditor could constitute failure to pay debts generally where "special circumstances" were shown.[11]  Over time, courts seem to have expanded the application of this doctrine. *See Moss*, 249 B.R. at 424 (citing *In re Norriss Bros. Lumber Co.*, 133 B.R. 599 (Bankr. N.D. Tex. 1991)). Some courts, including this one, have considered whether the special circumstances exception could be used to override the three-creditor requirement of section 303(b)(1) in cases involving an alleged debtor who may have engaged in certain fraudulent conveyances and preferential transfers. *See id*.; *see also In re Smith*, 415 B.R. 222, 238 (Bankr. N.D. Tex. 2009).

In *Law v. Siegel*, the Supreme Court somewhat limited the equitable power of bankruptcy courts when it held that courts lack the authority to permit a surcharge of a debtor's exempt property for payment of the trustee's attorney's fees due to the debtor's fraudulent conduct. 571 U.S. at 422-23. In reaching this result, the Supreme Court focused on two principles: first, that the surcharge violated a specific provision of the Bankruptcy Code; and second, it would be

---

[11] The court in *7H Land & Cattle Co.* analyzed section 303(h)(1) of the Code to find "special circumstances" where a single debt to one creditor may give rise to an order for involuntary bankruptcy.

6

inappropriate to allow an additional non-statutory exception where Congress had already enumerated several exceptions in section 522, none of which included a surcharge. *Id.* at 422-24. While bankruptcy courts have certain statutory and inherent equitable powers, they may not "override explicit mandates of other sections of the Bankruptcy Code." *Id*. at 421 (citing 11 U.S.C. § 105(a)).

Bankruptcy courts have continued to use their equitable powers where the Code is silent in the wake of *Siegel*, yet few courts have addressed the continued viability of the "special circumstances" exception. In *Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon)*, 922 F.3d 13, 22 (1st Cir. 2019), the First Circuit analyzed this issue and held that the "special circumstances" exception to the numerosity requirement in section 303(b) did not survive *Siegel*. This Court finds the First Circuit's reasoning in *Reyes-Colon* persuasive and adopts its analysis. *See id.* ("Here, the bankruptcy court would have plainly contravened section 303(b) if it bypassed the involuntary petition's creditor numerosity deficiency via the 'special circumstances' doctrine. . . . *Siegel* forecloses employing equity to waive this plain statutory requirement."). To the extent this Court has previously held the "special circumstances" exception applies to section 303(b), that ruling is no longer good law. *See Smith*, 415 B.R. at 238.

SummitBridge provides several scenarios of bankruptcy courts using their equitable powers to further the goals of the Bankruptcy Code post-*Siegel*, including first-day "critical vendor" motions in complex Chapter 11 cases. The Court believes critical vendor payments are different for a few reasons. First, there are several provisions within the Bankruptcy Code that justify these types of motions. *See*, *e.g.*, 11 U.S.C. §§ 363(b)(1), 105(a). Second, the consent of the parties typically plays a large role in a court's approval of such orders. *See*, *e.g.*, *In re CEI Roofing, Inc.*, 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004). And last, the Supreme Court appears to

7

have recently endorsed the use of these kinds of "interim" distributions. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017).

### Conclusion

The Court believes that addressing these areas of law will help the parties narrow the issues and applicable facts in this involuntary bankruptcy case. First, the Court concludes that a bona fide dispute as to the amount of a creditor's claim does not divest that petitioning creditor of standing to file an involuntary petition if there is an undisputed portion of the creditor's claim in excess of the statutory threshold in section 303(b). The Court also concludes that an alleged debtor's offsetting counterclaims can create a bona fide dispute as to amount if they cause the amount owed to the creditor to fall beneath the statutory threshold or could erase the entire debt. Second, the Court may not employ the "special circumstances" exception to avoid the technical requirements of section 303 of the Bankruptcy Code.

### END OF MEMORANDUM OPINION ##